U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 2 3 2016

CLERK, U.S. DISTRICT COURT
By _____
              Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ISAIAH SMITH,                          §
                                       §
              Plaintiff,               §
                                       §
VS.                                    §   NO. 4:16-CV-832-A
                                       §
TARRANT COUNTY COLLEGE DISTRICT, §
ET AL.,                                §
                                       §
              Defendants.              §

MEMORANDUM OPINION
and
ORDER

     After having reviewed the contents of the complaint by which

plaintiff, Isaiah Smith, initiated the above-captioned action on

September 7, 2016, the exhibits that accompanied the complaint,

and pertinent legal authorities, the court has concluded that all

claims asserted by plaintiff under 42 U.S.C. § 1983 in such

complaint should be dismissed pursuant to the authority of 28

U.S.C. § 1915(e)(2), and that the court should exercise its

discretion under 28 U.S.C. § 1367(c)(3) to dismiss all of

plaintiff's state law claims.

I.

.General Nature of Plaintiff's Complaint, and the
Identities of the Defendants Named in the Complaint,
and the Causes of Action Alleged

A.   General Nature of Complaint

     In late 2015, plaintiff, a twenty-one-year-old homeless

person living on the streets, became a student at the Trinity

River Campus ("TRC") of defendant Tarrant County College District ("TCCD").  Doc. 1 at ECF 6, ¶ 20.[1]  The allegations of the complaint disclose that he perceives that his problems at TRC started when a professor of psychology at TRC, defendant Mark Evans ("Evans"), befriended plaintiff by providing him food and discussing alternative living situations for plaintiff, which included giving plaintiff access to the TRC at nighttime.  _Id._ at ECF 5-8, ¶¶ 19-28.  Plaintiff alleged that Evans gave him his school key and his ID badge that would allow plaintiff to have access to the TRC campus building, "preferably at night."  _Id._ at ECF 6, ¶ 21.  Those alleged generosities of Evans seem to have led to everything about which plaintiff complains.

He summed up the nature of his complaints in the first numbered paragraph of the complaint as follows:

> Plaintiff Isaiah Smith was subjected to numerous intrusive and harassing investigations for engaging in lawful activities and through and by the actions and the conduct as to the defendants, the Plaintiff has suffered and continues to suffer to this day a loss of liberty, property and not being able to be treated equally and lawfully by college officials.

_Id._ at ECF 2-3.

---

[1]The "Doc. ___, at ECF ____" references are to the numbers assigned to the referenced item on the clerk's docket and to the ECF page number that appears at the top of each of the pages of the item. The references to the ECF page numbers is necessary because plaintiff did not provide pagination on his forty-three page complaint or on the 303 pages of exhibits that accompanied the complaint.

B.    Defendants

      Plaintiff named as defendants:

      (1)   TCCD;

      (2)   Eugene Giovannini ("Giovannini"), Chancellor of TCCD;

      (3)   Angela Robinson ("Robinson"), Acting Chancellor of TCCD
            while plaintiff was a student there, and now Vice
            Chancellor for Administration and General Counsel of
            TCCD;

      (4)   Stephen Madison ("Madison"), President of TRC Campus of
            TCCD;

      (5)   Keith Whetstone ("Whetstone"), Public Information
            Officer of TCCD;

      (6)   Adrian Rodriguez ("Rodriguez"), Vice President for
            Student Development Services at the TRC Campus of TCCD;

      (7)   Kateeka Harris ("Harris"), Coordinator of Student
            Support and Student Development Services at the TRC
            Campus of TCCD;

      (8)   Mayra Oliveres-Urueta ("Oliveres-Urueta"), Director of
            Student Development Services at the TRC Campus of TCCD;

      (9)   Jerome Albritton ("Albritton"), Supervisor of the
            Police Officials at the TRC Campus of TCCD;

      (10)  Shamika Denson ("Denson"), a Police Officer employed
            and commissioned by TCCD; and

                                    3

(11) Evans, a Professor employed by TCCD.

Id. at 3-4, ¶¶ 2-12.  Each of the individuals, numbers 2-11 named

above, is sued in his/her individual and official capacities.

C.    Causes of Action

Plaintiff alleged that "[t]his is a civil rights action that

raises federal questions under the First and the Fourteenth

Amendments to the United States Constitution, 42 U.S.C. § 1983."

Id. at 5, ¶ 13.  He asserted state law claims that he contended

are subject to this court's supplemental jurisdiction "to hear

the related claims as to the State law of Texas arising from the

same facts pursuant to 28 U.S.C. § 1367."  Id., ¶ 16.

After a twenty-seven page recitation of "FACTS," plaintiff

described his causes of action in seven counts, as follows:

"COUNT I As-Applied Violation of Plaintiffs' [Sic]

Rights to Free Speech under the First and Fourteenth

Amendments (42 U.S.C. § 1983)(All Defendants)";

Doc. 1 at ECF 33.

"County [sic] II Violation of Plaintiff's Civil

Rights Pursuant to 42 United States Code §1983 (EQUAL

PROTECTION)(All Defendants)";

Id. at ECF 34.

"County [sic] III As-Applied Violation of

Plaintiff's Right to Free Speech Under the First and

4

Fourteenth Amendments (42 U.S.C. § 1983) - Retaliation

(All Defendants)";

Id. at ECF 36.

"COUNT IV As-Applied Deprivation of Plaintiff's

Procedural and Substantive Due Process (42 U.S.C.

§ 1983)(All Defendants)";

Id. at ECF 37.

"COUNT V DEFEMATION [sic], LIBEL, SLANDER (All

Defendants)";

Id. at ECF 38.

"COUNT VI (Section 27 of the Texas State

Constitution Rights of Assembly; Petition for Redress

of Grievances)(Defendants Stephen Madison and Jerome

Albritton)"; and

Id. at ECF 39.

COUNT VII (Negligence)(All Defendants).

Id. at ECF 40.

5

II.

## Statutory and Case Authorities for the *Sua Sponte* Dismissals

Plaintiff applied to proceed in forma pauperis, and the court authorized him to do so. Docs. 2 & 7.[2] Section 1915 of Title 28 United States Code directs that in such a case,

> (2)  . . . the court shall dismiss the case at any time if the court determines that--
>
> . . . .
>
>> (B)   the action . . .
>>
>>> (i)   is frivolous or malicious;
>>> (ii)  fails to state a claim on which relief may be granted; or
>>> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).  The factors to be considered in determining whether the court should dismiss a case for one of the statutory reasons mentioned above are as follows:

A.   Frivolousness

A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Id.

---

[2]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:16-CV-832-A.

When evaluating the frivolousness issue, the court is to bear in mind that the § 1915 review provisions for possible <u>sua sponte</u> dismissal are "designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits . . . ." <u>Id.</u> at 327.  To that end, the statute "accords judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." <u>Id.</u>; <u>see also Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992).

With respect to a district court's evaluation as to whether facts alleged are "clearly baseless," the Supreme Court in <u>Denton</u>, in response to a request that it define the "clearly baseless" guidepost with more precision, said "we are confident that the district courts, who are 'all too familiar' with factually frivolous claims, are in the best position to determine which cases fall into this category," and thus declined "the invitation to reduce the 'clearly baseless' inquiry to a monolithic standard." <u>Denton</u>, 506 U.S. at 33 (citation omitted).

The <u>Neitzke</u> and <u>Denton</u> decisions both dealt with a version of 28 U.S.C. § 1915 that contained in its subsection (d) an

7

authorization for the district court to dismiss a claim filed in forma pauperis "if satisfied that the action is frivolous." Neitzke, 490 U.S. at 324; Denton, 504 U.S. at 27. The current version of § 1915 still mandates in its subsection (e)(2)(B)(i) dismissal of an in forma pauperis complaint if it is frivolous.

B.  Maliciousness

There are court decisions upholding a sua sponte dismissal for maliciousness pursuant to the authority of § 1915 where the action before the court "involves a duplicative action arising from the same series of events and alleging many of the same facts as an earlier suit." See, e.g., Brown v. Texas Bd. of Nursing, 554 F. App'x 268, 269 (5th Cir. 2014). That situation does not apply here.[3] Pertinent to this action is the conclusion expressed by the court in Spencer v. Rhodes, 656 F. Supp. 458, 464 (E.D.N.C. 1987), that if a person brings a suit "merely to satisfy his desire for vengeance against the Defendants, and not to rectify any wrong done to him, then the suit is a MALICIOUS one." Under those circumstances, the court has "broad discretionary authority to DISMISS," and such a dismissal would

---

[3]While plaintiff has two other suits now pending before this court claiming violations of his civil rights, Case No. 4:15-CV-818-A, Smith v. Birdville Independent School District, filed October 28, 2015, and Case No. 4:16-CV-176-A, Smith v. Management and Training Corporation, filed March 2, 2016, neither of those cases is duplicative of the claims plaintiff is making in the instant action. The first is a complaint that plaintiff was inappropriately bullied while attending Birdville High School, and the second is a claim of sex discrimination against a former employer of plaintiff.

be consistent with the legislative intent expressed in § 1915.
Id.   In Ballentine v. Crawford, 563 F. Supp. 627, 628-29 (N.D.
Ind. 1983), the court held that "a complaint plainly abusive of
the judicial process is properly typed 'malicious' within the
context of Section 1915(d) which authorizes immediate dismissal
of the same."   A suit brought for the purpose of harassing the
defendants is brought maliciously.   Daves v. Scranton, 66 F.R.D.
5, 8 (E.D. Pa. 1975).

C.   Failure to State a Claim

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests,"
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted).   Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action.   Twombly, 550 U.S. at 555 & n.3.   Thus, while a court
must accept all of the factual allegations in the complaint as
true, it need not credit bare legal conclusions that are

unsupported by any factual underpinnings. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. <u>Id.</u> To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. <u>Twombly</u>, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

The pleading standards stated above apply separately to each claim and each defendant in a plaintiff's complaint.

D.   <u>Immunity From Relief</u>

Each of the individual defendants is eligible to assert the qualified immunity defense as to each claim asserted against him/her under 42 U.S.C. § 1983. Although a plaintiff is not obligated to anticipate such a defense in his complaint at the risk of dismissal under Rule 12 of the Federal Rules of Civil Procedure, <u>see</u> <u>Schultea v. Wood</u>, 47 F.3d 1427, 1430 (5th Cir.

1995), the wording of § 1915(e)(2)(B)(iii) suggests that qualified immunity is a factor the court should consider as part of the § 1915 review process.

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40.

In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to

11

consider all relevant legal authority, whether cited by the parties or not. <u>Elder v. Holloway</u>, 510 U.S. 510, 512 (1994).

If public officials of reasonable competence could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986); <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." <u>Malley</u>, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991); <u>Duckett v. City of Cedar Park</u>, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. <u>Siegert</u>, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. <u>Connelly v. Comptroller</u>, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer

to lose his qualified immunity defense.  In <u>Hunter</u>, the Supreme

Court explained:

> The qualified immunity standard "gives ample room for
> mistaken judgments" by protecting "all but the plainly
> incompetent or those who knowingly violate the law."
> <u>Malley</u>, [475 U.S.] at 343. . . .  This accommodation for
> reasonable error exists because "officials should not err
> always on the side of caution" because they fear being sued.
> . . .

502 U.S. at 229.

There are two aspects to the qualified immunity inquiry.

One is a decision as to whether the facts alleged and shown make

out a violation of a constitutional right, and the other is

whether the right at issue was clearly established at the time of

the defendant's alleged conduct.  In <u>Pearson v. Callahan</u>, the

Supreme Court held that district courts are authorized to

determine the order of deciding the two aspects.  555 U.S. 223,

242 (2009). Inasmuch as the qualified immunity defense creates

entitlement to "<u>immunity from suit</u> rather than a mere defense to

liability . . . it is effectively lost if a case is erroneously

permitted to go to trial."  <u>Id.</u> at 231 (emphasis added).

III.

## Official Capacity Claims Against Individual Defendants Are Claims Against TCCD

As all of the official capacity claims against the

individual defendants are considered to be claims against their

13

employer, defendant, TCCD, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>see also</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). The official capacity claims are redundant inasmuch as TCCD is separately named as a defendant. The court is considering all of them to be claims against TCCD.

IV.

### Plaintiff's § 1983 Claims Against the Individual Defendants Must Be Dismissed

Section 1983 is not a source of substantive rights, but merely provides a method of vindicating federal rights conferred elsewhere. <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994). To state a claim for relief under § 1983, the plaintiff must allege facts plausibly establishing that an individual acting under color of state law caused the deprivation of a specific right secured by the Constitution or laws of the United States. <u>Id.</u>; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). As discussed below, plaintiff has failed to make such allegations as to any of the individual defendants.

A. <u>Allegations Against Individual Defendants</u>

1. <u>Giovannini</u>

There is no allegation of fact as to anything Giovannini did that affected plaintiff. Plaintiff alleged that Giovannini is Chancellor of TCCD, and that under his authority, and through and

14

pursuant to his authority, plaintiff continues "a denial as to his liberty, property, and has not had any of his student record cleared as to unconstitutional actions and conduct that the defendant has engaged in." Doc. 1 at ECF 3, ¶ 3. An award of punitive damages is sought by plaintiff against Giovannini "for his intentional, knowing, or reckless disregard to Plaintiff's constitutional rights." Id. at ECF 41, ¶ 12. According to the allegations of the complaint, Giovannini was not even Chancellor of TCCD when plaintiff was a student there. Id. at ECF 3, ¶ 4. No facts are alleged that would suggest that there is a rational basis for any claim made by plaintiff against Giovannini. Certainly there is no allegation of facts plausibly establishing that Giovannini caused a deprivation of a specific right of plaintiff secured by the Constitution or laws of the United States.

    2.  <u>Robinson</u>

Plaintiff alleged that Robinson was the Acting Chancellor of TCCD while plaintiff was a student there, and that she is currently the Vice Chancellor for Administration and General Counsel of TCCD. Id. at ECF 3, ¶ 4. An award of punitive damages was sought by plaintiff from Robinson "for her intentional, knowing, or reckless disregard of Plaintiff's constitutional rights." Id. at ECF 42, ¶ 13. No facts are

alleged that would rationally lead to the conclusion that Robinson did anything to cause a deprivation of any specific right of plaintiff secured by the Constitution or laws of the United States.

### 3.   Madison

Plaintiff alleged that Madison is President of the TRC Campus of TCCD.  Id. at ECF 4, ¶ 5.  Madison is mentioned in several paragraphs of the complaint.  Id. at ECF 10, ¶¶ 39 & 40, ECF 18, ¶¶ 73 & 74, ECF 26-27, ¶ 106, ECF 29, ¶ 116.  However, no allegation is made in any of those paragraphs of anything Madison did that could be construed as a deprivation by Madison of any specific right of plaintiff secured by the Constitution or laws of the United States.  The thrust of plaintiff's complaints against Madison is that he did not respond as promptly as plaintiff thought he should have responded to plaintiff's requests or demands.  Plaintiff sought an award of punitive damages from Madison "for his intentional, knowing, or reckless disregard to Plaintiff's constitutional rights."  Id. at ECF 42, ¶ 14.

### 4.   Whetstone

Plaintiff makes allegations about Whetstone only twice in the complaint.  First, the identification of him as the Public Information Officer of TCCD, id. at ECF 4, ¶ 6; and the second

16

time to make known that he wanted an award of punitive damages from Whetstone "for his intentional, knowing, or reckless disregard to Plaintiff's constitutional rights," id. at ECF 42, ¶ 15. There is no allegation of fact that would support a conclusion that Whetstone deprived plaintiff of any specific rights secured by the Constitution or laws of the United States.

     5.   Rodriguez

Plaintiff identified Rodriguez as the Vice President for Student Development Services at the TRC Campus of TCCD. Id. at ECF 4, ¶ 7. Thereafter, plaintiff mentioned Rodriguez in five paragraphs of his complaint. Id. at ECF 15-16, ¶ 63, ECF 26, ¶¶ 104 & 105, ECF 31-32, ¶ 127, ECF 42, ¶ 16. Plaintiff includes in his complaints about Rodriguez that plaintiff was told by another person that that person had had a meeting with Rodriguez about plaintiff destroying the ISIS flag, and that Rodriguez told the other person that he would deny plaintiff the right to do that. Apparently, according to the allegations, Rodriguez played a role in the decision to issue the criminal trespass suspension of plaintiff from the campus, and refused to drop the suspension. Plaintiff also complained that details Rodriguez listed in the criminal trespass warning issued to plaintiff were inconsistent with the statement made by another person. The final mention of Rodriguez in the complaint was the assertion by plaintiff that he

was seeking an award of punitive damages from Rodriguez "for his intentional, knowing, or reckless disregard to Plaintiff's constitutional rights." Id. at ECF 42, ¶ 16. There is no allegation of fact that would support a conclusion that Rodriguez deprived plaintiff of any specific rights secured by the Constitution or laws of the United States.

6. Harris

Plaintiff described Harris as the Coordinator of Student Support and Student Development Services at the TRC Campus of TCCD. Id. at ECF 4, ¶ 8. Harris was mentioned in several paragraphs of the complaint. The alleged criticisms plaintiff had about her were that she declined to release to him documents that she thought were confidential records, id. at ECF 9, ¶ 34; that she presented the disciplinary board panel with a new charge that he was not informed about, and he was not able to properly prepare for an effective defense due to not having knowledge of the new charge until the last minute, id. at ECF 10, ¶ 39; that plaintiff was served with an administrative summons to appear before Harris, "as to potential violations of the TCCD Student Code of conduct," id. at 11, ¶ 45; that Harris sent him an email that included a letter attachment informing him that he was temporarily suspended from college campus, which explained why the suspension occurred, which letter told him to contact Harris

18

to learn of his hearing options, and that once he had selected a
hearing format, the hearing would be scheduled, and that if he
failed to contact Harris by a specified date, a hearing format
would be chosen for him, and he would be notified of a hearing
date and time, id. at ECF 22, ¶ 90; that on January 8, 2016,
Harris sent plaintiff a letter concerning a challenge by him of
his disciplinary suspension, id. at ECF 27, ¶ 109; that in a
letter dated January 8, 2016, Harris informed him of the
accusations against him concerning violations of TCCD's Student
Handbook policies, and that his requests for a board hearing had
been scheduled for January 12, 2016, at 2:00 p.m. to address his
alleged violations, and inviting him to bring any evidence and/or
witnesses with him at that time, id. at ECF 27-28, ¶¶ 110 & 113;
and that Harris told plaintiff that he could appeal a
disciplinary decision if he submitted written correspondence to
the Campus President, in response to which plaintiff sent Madison
a written appeal of his disciplinary decision, id. at ECF 29, ¶
115.

　　Plaintiff requested that he be given an award of punitive
damages against Harris for her "intentional, knowing, or reckless
disregard to Plaintiff's constitutional rights." Id. at ECF 42,
¶ 17.　There is no allegation of fact that would support a

19

conclusion that Harris deprived plaintiff of any specific rights secured by the Constitution or laws of the United States.

### 7.   Oliveres-Urueta

Plaintiff alleged that Oliveres-Urueta is the Director of Student Development Services of the TRC Campus of TCCD.  Id. at ECF 4, ¶ 9.  He said he was told that the only way he would be able to pass out magazines in the hallways of the campus would be to obtain approval from Oliveres-Urueta, who did not respond to his requests for approval.  Id. at ECF 14, ¶¶ 55 & 57.  Plaintiff sought an award of punitive damages against Oliveres-Urueta for her "intentional, knowing, or reckless disregard to Plaintiff's constitutional rights."  Id. at ECF 42, ¶ 18.  There is no allegation of fact that would support a conclusion that Oliveres-Urueta deprived plaintiff of any specific rights secured by the Constitution or laws of the United States.

### 8.   Albritton

Plaintiff alleged that Albritton is the Supervisor of the Police Officials at the TRC Campus of TCCD.  Id. at ECF 4, ¶ 10.  Plaintiff complained that Albritton notified plaintiff that plaintiff could not burn or destroy an ISIS flag at the public college due to offending the Muslim students and because doing so would destroy the diversity of the campus, and he threatened to arrest plaintiff if plaintiff destroyed the ISIS flag on the

campus and informed plaintiff that any proposal would be denied
by the officials who were responsible for approving student First
Amendment activities.  Id. at ECF 13, ¶ 52.  On December 15,
2015, plaintiff communicated with Albritton concerning what
Albritton had told him, and requested an informal resolution with
Albritton over that issue; and, plaintiff alleged that Albritton
did not respond to plaintiff's request for an informal
resolution, following which plaintiff sent Albritton a
communication, reminding Albritton of plaintiff's earlier
communications to him requesting an informal resolution meeting
with Albritton.  Id. at ECF 15-16, ¶¶ 62-66.  Plaintiff made
further allegations concerning Albritton's non-responsiveness to
plaintiff's demands or requests for informal resolutions of
matters of concern to plaintiff.  Id. at ECF 16-27, ¶¶ 67-72, 77-
79, 81, 107, & 108.

Plaintiff sought an award of punitive damages from Albritton
for his "intentional, knowing, or reckless disregard to
Plaintiff's constitutional rights."  Id. at ECF 42, ¶ 19.  There
is no allegation of fact that would support a conclusion that
Albritton deprived plaintiff of any specific rights secured by
the Constitution or laws of the United States.

9. <u>Denson</u>

Denson is a Police Officer employed and commissioned by TCCD. <u>Id.</u> at ECF 4, ¶ 11. On December 13, 2015, plaintiff noticed that Denson was following him on the campus, so he decided to record her because he was not sure why she was following him; later that day, "he noticed that it appeared that Defendant Denson was 'slaking' him however he remained calm and cool." <u>Id.</u> at ECF 20, ¶ 85. On that same day Denson made contact with plaintiff, and was very rude and loud, so plaintiff began to video record Denson and Denson was already recording plaintiff. <u>Id.</u> at ECF 20-21, ¶¶ 84-86. Plaintiff expressed disagreement with a written statement and report against plaintiff that Denson wrote, and that resulted in plaintiff being trespassed from TCCD; plaintiff claimed that Denson's statement was different from what is shown on the video of her police body camera and from a statement by Raymong Aldridge, who had complained about plaintiff taking his picture; plaintiff filed a complaint against Denson with the Tarrant County District Attorney's Office and with the TCCD. <u>Id.</u> at ECF 25-26, ¶¶ 101-102. Plaintiff requested punitive damages from Denson for her "intentional, knowing, or reckless disregard to Plaintiff's constitutional rights." <u>Id.</u> at ECF 42, ¶ 20. There is no allegation of fact that would support a conclusion that Denson

22

deprived plaintiff of any specific rights secured by the

Constitution or laws of the United States.

    10.  <u>Evans</u>

    Plaintiff alleged that Evans is a professor in the employ of

TCCD.  <u>Id.</u> at ECF 4, ¶ 12.  Most of the mentions by plaintiff of

Evans in the complaint are concerning the facts that Evans

befriended plaintiff and provided plaintiff food and shelter, and

that one of the problems plaintiff had with TCCD personnel was as

a result of taking advantage of the privileges he said Evans

extended to him.  <u>Id.</u> at ECF 5-8, ¶¶ 19-31, ECF 20, ¶¶ 82-83.

Plaintiff expressed concern that, when confronted by officials of

TCCD, Evans denied plaintiff's assertion that he had given

plaintiff permission to stay on campus overnight.  <u>Id.</u> at ECF 8,

¶ 31 & ECF 20, ¶ 82.

    Plaintiff did not request punitive damages against Evans,

but alleged in his Count III § 1983 count that:

> By attempting to silence Plaintiff from filing a
> lawsuit and a written grievance against school
> officials violating his rights, Defendant Evans
> violated a clearly established constitutional right of
> which all reasonable college administrators, faculty,
> and staff should have known, rendering him liable to
> Plaintiff under 42 U.S.C. § 1983.

<u>Id.</u> at ECF 37, ¶ 7.  As has been true concerning plaintiff's

allegations against each of the individual defendants, his

allegations against Evans are purely conclusory.  There are no

allegations of fact against Evans that could be construed as a deprivation by Evans of any specific right of plaintiff secured by the Constitution or laws of the United States.

*  *  *  *  *

The exhibits plaintiff filed with his complaint provide insight into some of the circumstances to which plaintiff made reference in the allegations of his complaint.  His exhibit 13 was a report on a TCCD Incident Reporting Form that was submitted on November 13, 2015, by a Student Life Center Student Worker, which gave as the Reasons for Report "Scholastic Dishonesty; Distressed Student; Violations of Student Handbook," and described the following incident:

> This student, Isaiah Smith, has been harrasing [sic] the student workers concerning a series of questions that have no relevance to the purpose of his visit on most occasions.  On Monday, November 9th, he called to ask a number of things and a few minutes later he physically came into the office to ask where he can receive a permit to express his 2nd amendment, that being, to burn the I.S.I.S. flag on the public sidewalk in front of the campus with a group of students.  We then directed him to the Police Department because that was not in our jurisdiction.

Doc. 1 (Doc. 1-2 at ECF 23).  On November 23, 2015, Harris, as Coordinator of Student Support, transmitted electronically to plaintiff a letter that said, <u>inter alia</u>, the following:

> Our office received information regarding alleged violations of the Tarrant County College District (TCCD) Student Handbook stemming from an incident on or

24

about November 9, 2015, in or around Trinity River
Campus, involving disruption of educational activities.
More specifically, you were allegedly harassing the
student workers concerning a series of questions that
have no relevance to the purpose of his visit on most
occasions. Then again on November 13, 2015 you came
into the office asking about freedom of speech permits
and says he was told to come to our office in order to
get them. The specific alleged violations are:

VII. STUDENT DISCIPLINE: 7. Behavior that
interrupts or disrupts educational activities
VI. STUDENT RIGHTS AND RESPONSIBILITIES:
Discrimination, Harassment, Retaliation

Doc. 1 (Doc. 1-2 at ECF 20). The letter informed plaintiff that

he should contact Harris by December 1 to schedule a conference

for the purpose of reviewing the allegations and potential

charges, the Student Handbook, plaintiff's hearing options, the

student conduct process, possible sanctions, and to answer any

questions Harris might have. Id. He was told that he would be

given an opportunity to accept any responsibility or not to

accept responsibility for the violations, and he was given a

telephone contact number for Harris if he had any questions. Id.

The letter was accompanied by a TCCD Statement of Student Rights

and Responsibilities, which clearly outlined procedures that

provided plaintiff due process related to his alleged violation.

Id. (Doc. 1-2 at ECF 21-22). Included in Exhibit 12 is another

Incident Reporting Form that gives a further description of what

25

was viewed to be the inappropriate conduct of plaintiff on November 9, 2015. Id. (Doc. 1-2 at ECF 16-17).

On December 2 and again on December 15, plaintiff sent communications to Madison and Albritton requesting meetings to discuss the complaints that had been made against him. Id. (Doc. 1-3 at ECF 26 & 27).

There are exhibits to the complaint that could be viewed to be substantiation of plaintiff's allegations concerning the generosity Evans showed to plaintiff as a homeless person. Doc. 1 at ECF 47-50, and Doc. 1 (Doc. 1-1 at ECF 1-3). On December 11, 2015, Jannet R. Ponder provided a handwritten statement that was worded as follows:

> 12/11 - For the last couple of days, I have notice that a student, Isiah, has been stashing his item underneath an instructor's (Mark Evan) desk on the 5th floor. I was not sure of this arrangement but I let it go until a coworker brought it up today.

> Isiah came onto our floor around 4:30ish and one of our SI people spoke to him, stating that the particular instructor was not here, Isiah left. We (the Admin Assts) got concerned because we were leaving at 5 and Isiah's stuff was underneath the desk, so I texted the instructor, Mark Evans, to find out if the student has permission to do so. Mark texted me back stating he asked him not to. So Angela, another admin, called the police to have his items picked up.

Doc. 1 (Doc. 1-3 at ECF 42)(errors in original).

On December 13, 2015, Denson made a report of suspicious

activity pertaining to plaintiff, that read as follows:

> On Sunday, December 13, 2015, at approximately
> 1650 hours, I, Officer Denson #282, a Peace Officer
> with Tarrant County College District (TCCD), currently
> assigned to the Trinity River Campus at 300 Trinity
> Campus Circle, Fort Worth, Texas 76102 was securing the
> Tahita Fulkerson Library at TREF 2302 when I overheard
> a male voice speaking loudly as if he was in distress.
>
> At this time, I walked outside of the library into
> the hallway and observed Isaiah Xavier Smith, Jr. (see
> involved parties) standing at approximately four feet
> away from Raymon T. Aldridge, a GCA Service Group
> employee (see involved parties). Smith was holding a
> silver cell phone at approximately arm's length away
> from Aldridge's face. Aldridge asked Smith, "What are
> you doing? I have not given you permission to take my
> picture." Smith ignored Aldridge's request not to
> photograph him, and continued to hold the cell phone in
> Aldridge's face. I advised Smith to leave Aldridge
> alone. Smith, then stated, "Okay, then I will video
> you." I advised Aldridge to ignore Smith's conduct and
> walk away from Smith's presence. I then advised Smith
> to stop what he was doing and walk away. Aldridge was
> upset because he believed Smith was retaliating against
> him (Aldridge) for reporting him to the TCCD Police
> Department (Please reference TCCD Police Report 151168
> for additional details). I then asked Aldridge to
> explain to me what happen to him prior to my arrival.
>
> Aldridge advised the following: While he was en
> route to the Trinity River East Fork Building from the
> second floor near the library, he noticed that Smith
> was walking in his direction. Before Aldridge was able
> to pass by Smith, he noticed that Smith had pulled out
> his cell phone and began to take pictures of him
> without his consent. Aldridge verbally advised Smith
> to stop taking his picture, but Smith ignored his
> request and kept holding the cell phone in front of his
> face without making any remarks. Aldridge stated on
> Tuesday, December 1, 2015, around 2302 hours, he found
> Smith hidden inside TREF 5228A Huddle Room and reported

Smith to the TCCD Police.   Therefore, Aldridge believes
that Smith was trying to provoke a negative response
from him.   I advised Aldridge to complete a voluntary
statement and I would attached his statement to this
report in Other Media.

Id. (Doc. 1-4 at ECF 1-2)(errors in original).

On December 17, 2015, officials of TCCD issued a Criminal

Trespass Warning to plaintiff that, in effect, prohibited him

from entering, or remaining, on property of TCCD, stating that

the warning would be in effect until plaintiff received notice

that it had been rescinded, and giving as reasons for the warning

the following:

> Reason:
> Incident that took place on December 11, 2015 in
> which you are alleged to have entered into an
> instructor's office and stored your personal belongings
> under the desk without permission then failed to comply
> with the directive of a College Official when asked to
> remove your belongings.   Then on December 13, 2015 you
> allegedly harassed and took unsolicited photos, and
> video with your cell phone of an individual who had
> previously reported you for misconduct.
>
> VI. STUDENT RIGHTS AND RESPONSIBILITIES:
> Discrimination, Harassment, Retaliation
> VII. STUDENT DISCIPLINE: 10. Repeated and
> deliberate failure to comply with directives of
> College Officials, including police officers, in
> the performance of their duties.

28

Id. (Doc. 1-3 at ECF 43). On that same date, Harris

electronically communicated a letter to plaintiff, which, in

pertinent part, provided as follows:

> This letter is in regard to an incidents that took
> place on December 11, 2015 in which you are alleged to
> have entered into an instructors office and stored your
> personal belongings under the desk without permission
> then failed to comply with the directive of a College
> Official when asked to remove your belongings.  Then on
> December 13, 2015 you are allegedly harassed and took
> unsolicited photos, and video with your cell phone of
> an individual who had previously reported you for
> misconduct.  Because of the serious level of accusation
> you are being placed on **Temporary Suspension effective
> immediately**.  Your status of temporary suspension
> shall remain in place until your conduct hearing is
> completed and a formal outcome can be determined.
>
> Potential policy violations include:
>
> VII. STUDENT DISCIPLINE: 7. Behavior that
> interrupts or disrupts educational activities
> VI. STUDENT RIGHTS AND RESPONSIBILITIES:
> Discrimination, Harassment, Retaliation
>
> VII. STUDENT DISCIPLINE: 10. Repeated and
> deliberate failure to comply with directives of
> College Officials, including police officers, in
> the performance of their duties
>
> Conditions of this temporary suspension are as
> follows:
>
> You are Criminally Trespassed and prohibited from
> being on ALL Tarrant County College property including
> but not limited to all classrooms, parking garage,
> dining/food areas, bookstore, hallways, library, labs
> and offices.
>
> You are prohibited from attending all classes,
> meetings, and appointments or conducting any other

> business you may have with the College during the
> suspension.
>
>      Failure to abide by these conditions may result
> in your immediate suspension or expulsion from the
> college.

Id. (Doc. 1-3 at ECF 47-48)(errors in original).  The letter went

on to inform plaintiff that he had the right to have a hearing to

determine if there had been a violation of the Student Conduct

Code, and gave him options of the kind of hearing procedure he

would prefer, id., and he was instructed to contact Harris at the

telephone number provided in the letter to communicate his

hearing format option and concerning the scheduling of the

hearing, id.

The December 17, 2015 letter mentioned above was followed by

another series of communications from plaintiff to officials of

TCCD demanding that they have informal resolution meetings with

plaintiff.  Id. (Doc. 1-3 at ECF 28-31, ECF 32-35, ECF 39-41)

(Doc. 1-5 at ECF 17-21, ECF 43-46).

On January 8, 2016, Rodriguez electronically sent a letter

to plaintiff informing him of the time, date, and location for a

disciplinary hearing that had been scheduled, that the outcome of

the hearing would determine if he was responsible for violating

the TCCD Student Handbook, and that he would have an opportunity

to appeal the outcome of the decision if he deemed it necessary.

Id. (Doc. 1-5 at ECF 22-23). The letter provided plaintiff an explanation of the process of appealing the hearing decision, and invited him to contact Harris if he had further questions. Id.

On January 20, 2016, the Coordinator of Student Support sent a letter electronically to plaintiff providing him the following information concerning the outcome of his disciplinary hearing:

> After careful review of the information provided, and your statement provided during your Disciplinary Hearing on January 12, 2016, the following determination has been made related to the violation(s) of the Tarrant County College District Handbook for which you were charged:
>
> > VII. STUDENT DISCIPLINE: 7. Behavior that interrupts or disrupts educational activities -- Violation
> > VI. STUDENT RIGHTS AND RESPONSIBILITIES: Discrimination, Harassment, Retaliation -- Violation -- Violation
> >
> > VII. STUDENT DISCIPLINE: 10. Repeated and deliberate failure to comply with directives of College Officials, including police officers, in the performance of their duties -- Violation
>
> Based on this determination, you have been issued the following sanction(s):
>
> You are on Disciplinary Suspension effective January 12, 2016 through May 15, 2016. As a result of an incident of misconduct, a student may be immediately suspended by the College for a period of time, when there is evidence that the continuing presence of the student may be disruptive to the College operations. Established disciplinary hearing procedures will be followed to determine the final outcome of the student's case.

With respect to the information listed above, the following additional sanctions/stipulations apply:

Student is placed on disciplinary suspension for the Spring 2016 semester with conditional admission for the Summer 2016 term.

Student also has no contact order for GCA Employee Mr. Aldridge.

You do have the option to appeal this decision.  A written request to appeal this decision must be filed by you with the Vice President for Student Development Services within 10 days after the initial decision was made.  The final date to submit an appeal will be January 30, 2016.  The campus President may affirm the initial action, refer the case back to the initial hearing agent for further hearing in part or whole, request further findings and recommendation, or reduce the discipline imposed upon the student involved.  The campus President's decision is final and ends the appeals process.

Id. (Doc. 1-5 at ECF 49-50).

Most of the remaining exhibits that accompanied plaintiff's complaint pertain to attempts by plaintiff to cause the Tarrant County District Attorney to institute criminal action against defendants Whetstone, Denson, and other officials of TCCD because of their failure to comply with his requests to TCCD for information.  The initial request made by plaintiff was directed to Whetstone on March 24, 2016, asking for a copy of the application of defendant Evans for employment and the disciplinary file of TCCD pertaining to Evans.  Id. (Doc. 1-6 at ECF 11-12).  When plaintiff did not receive a response that he

thought satisfactory, he made a complaint to the Texas Attorney General. Id. (Doc. 1-6 at ECF 21-22). Plaintiff's next move was to encourage the Tarrant County District Attorney to file criminal charges, and to prosecute, Whetstone and all other officials of TCCD who had failed to provide him the information he requested about Evans. Id. (Doc. 1-6 at ECF 7-9). Plaintiff persisted in his efforts to cause Whetstone and other TCCD officials to be criminally prosecuted, by following up with another letter to the Office of the Tarrant County District Attorney on May 16, 2016. Id. (Doc. 1-6 at ECF 25-26).

Then plaintiff made, on June 14, 2016, another request for information by a letter directed to Whetstone, this time for records pertaining to the events that led to TCCD's decision to ban plaintiff from its campus. Id. (Doc. 1-3 at ECF 44-46). Plaintiff followed-up with another records request directed to Whetstone on July 18, 2016, this time requesting records reflecting communications by plaintiff to Whetstone. Id. (Doc. 1-6 at ECF 4-6).

On July 18, 2016, plaintiff sent a letter, with accompanying items, to the Tarrant County District Attorney in an attempt to cause defendant Denson to be criminally prosecuted. Id. (Doc. 1-4 at ECF 5-50 & Doc. 1-5 at ECF 1-16).

As late as August 11, 2016, less than thirty days before the instant action was filed by plaintiff, he was still encouraging the Tarrant County District Attorney's office to criminally prosecute Whetstone and "other responsible individuals as for violating the Texas Public Information Act." <u>Id.</u> (Doc. 1-6 at ECF 2-3).

B.    <u>All Factors Requiring Dismissal Specified in § 1915(e)(2)(B)</u>
      <u>Exist as to the § 1983 Claims Against the Individual</u>
      <u>Defendants</u>

The court has concluded that plaintiff brought this action against the individual defendants frivolously and maliciously, that plaintiff has failed to state a claim upon which relief may be granted against any of the individual defendants, and that the record suggests that each of the individual defendants enjoys immunity from liability by virtue of the qualified immunity doctrine.

      1.    <u>Frivolousness and Maliciousness</u>

The court has concluded that plaintiff's claims against all the defendants are clearly baseless and, therefore, frivolous. Plaintiff has alleged no facts that would support any claim against any of the individual defendants. Not only was the action brought against the individual defendants frivolously, the court is satisfied, and finds, that it was brought maliciously.

The attempts by plaintiff to criminally prosecute individual defendants and the requests by plaintiff for punitive damages against all individual defendants other than Evans tend to confirm what is otherwise indicated by the contents of plaintiff's filings that plaintiff brought this action against the individual defendants to satisfy his desire for vengeance against everyone associated with TCCD who played any role in interfering with plaintiff's plan for, and acts of, disruption at the TRC Campus. The record suggests that plaintiff was given, and took advantage of, an opportunity to present his side of the story at a duly scheduled hearing as to each of the on-campus events about which he complains and that this action is but an abuse of the judicial process by plaintiff in an attempt to prove to the officials and employees of TCCD that they should not mess with plaintiff and should allow him to conduct himself on the college campus as he might choose. Put simply, a purpose plaintiff had in bringing this action was to harass and punish the individual defendants.

   2.   Failure to State a Claim

As the court has noted in the discussions of the allegations against the individual defendants in section IV.A. above, no facts are alleged against any individual defendant that would provide a plausible basis for any claim made by plaintiff against

that defendant.  There is no allegation of fact against any individual defendant establishing that the defendant caused a deprivation of a specific right of plaintiff secured by the Constitution or the laws of the United States.  Moreover, plaintiff's allegations are woefully short of the specificity, particularity, and plausibility required by the Supreme Court decisions in Twombly, 550 U.S. at 555, and Iqbal, 556 U.S. at 679.

Plaintiff's repeated references to activities of "Defendants," without specifying or identifying a particular defendant (such as the allegations in many of the paragraphs under the heading "CAUSES OF ACTION" in the complaint (Doc. 1 at ECF 33-37, ¶¶ 137-41, 144-54, Count III ¶¶ 3 & 6, Count IV ¶¶ 7 & 8, Count V ¶¶ 3-5, Count VI ¶¶ 3 & 4)), are to be ignored in an evaluation of whether facts are alleged from which the court could plausibly conclude that any individual defendant did or failed to do something that would give plaintiff justification for suing him/her.  See Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999).  Nor are plaintiff's conclusory allegations to be considered.

The exhibits that accompanied the complaint show affirmatively that whatever due process rights plaintiff had related to the matters about which he complains were recognized

and honored by the individual defendants who were involved in any of the decision-making about which plaintiff complains. The exhibits disclose that the TCCD personnel were careful to see that plaintiff had notice of complaints against him and had the opportunity to tell his side of the story. There is no suggestion in any of the facts alleged in the complaint that any of the TCCD personnel who were involved in the taking of any action about which plaintiff complains were acting arbitrarily or capriciously. Nor is there any suggestion in any of the allegations of plaintiff's complaint or the related exhibits that plaintiff was treated differently from any other TCCD student who had engaged in conduct comparable to his.

Plaintiff's approach in his complaint seems to be that every one of the individual defendants has responsibility for conduct of other employees or officials of TCCD affecting plaintiff, perhaps based on some theory of vicarious liability. Such an approach fails because a theory of respondeat superior or vicarious liability is not available in a case such as this. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 558, 691 (1978); see also Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). The court adds that even if some kind of vicarious liability theory could be invoked, plaintiff would be no better off because he has not pleaded facts that would create liability

37

on the part of any person who conceivably could be the source of liability sought to be imposed on any other party.

   3.   Immunity From Relief

   Each of the defendants, as an employee or official of a governmental unit, is entitled to the qualified immunity defense. None of plaintiff's allegations suggests that any of the individual defendants did anything in relation to plaintiff that an objectively reasonable government employee or official would understand violated a constitutional right of plaintiff.  The conclusion cannot be reached from the allegations of plaintiff's complaint that any of the individual defendants engaged in conduct in relation to plaintiff that was not objectively reasonable under the circumstances.  There is no suggestion in any of the allegations of the complaint that any of the individual defendants violated any constitutional right of plaintiff that was clearly established at the time of the defendant's conduct.  Therefore, the immunity-from-relief prong of § 1915(e)(2)(B)(iii) provides yet another reason why plaintiff's claims against the individual defendants should be dismissed.

                         *  *  *  *  *

   For the reasons given above, all of plaintiff's § 1983 claims against the individual defendants must be dismissed.

V.

<u>Plaintiff's § 1983 Claims Against TCCD Must Be Dismissed</u>

Plaintiff's claims against TCCD are subject to dismissal for the same frivolousness, maliciousness, and failure-to-state-a-claim reasons discussed in the immediately preceding section. The court is satisfied that this action was brought for improper purposes, and with wrongful motives, against all defendants. Moreover, the reasons for dismissal previously discussed under the failure-to-state-a-claim subsection apply as well to TCCD.

Furthermore, a governmental entity, such as TCCD, can be subjected to relief under § 1983 only if one of its official policies caused a person to be deprived of a federally protected right. <u>Monell</u>, 436 U.S. at 694. TCCD cannot be held liable under a theory of <u>respondeat superior</u> or vicarious liability. <u>Id.</u> Instead, liability may be imposed against a government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011) (quoting <u>Monell</u>, 436 U.S. at 692) (internal quotation marks omitted). To hold TCCD liable under § 1983 thus requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." <u>Spiller v. City of Texas City, Police Dep't</u>, 130 F.3d

162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). Therefore, liability against TCCD pursuant to § 1983 requires allegations and proof of a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued <u>en banc</u> in response to a motion for rehearing in <u>Bennett v. City of Slidell</u>:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

For the reasons given above, all of plaintiff's § 1983 claims against TCCD must be dismissed.

VI.

### The Court is Exercising Its Discretion to Dismiss Plaintiff's State Law Claims

In dismissing plaintiff's § 1983 claims, the court has given proper effect to the mandatory "shall dismiss" wording Congress used in § 1915(e)(2).  The argument might be made that dismissal of plaintiff's state law claims also is required if any of the determinations set forth in § 1915(e)(2)(B) exist as to those claims.  The court is inclined to think that one or more of those determinations does exist as to all of the state law claims, but in recognition of what this court understands the preference of the Fifth Circuit to be, see Watson v. City of Allen, Tex., 821 F.3d 634, 642 (5th Cir. 2016), the court is not dismissing the state law claims for that reason but, instead, is dismissing them as an exercise of the court's discretion under § 1367(c)(3).

VII.

### Order

For the reasons stated above,

The court ORDERS that all claims and causes of action asserted by plaintiff in the above-captioned action under

42 U.S.C. § 1983 be, and are hereby, dismissed pursuant to the authority of 28 U.S.C. § 1915(e)(2)(B)[4]; and

The court further ORDERS that all claims and causes of action asserted by plaintiff in the above-captioned action based on the laws of the State of Texas be, and are hereby, dismissed pursuant to the authority of 28 U.S.C. § 1367(c)(3).[5]

SIGNED December 23, 2016.

_____
JOHN MCBRYDE
United States District Judge

---

[4]This dismissal includes all claims made by plaintiff in Counts I, II, III, and IV of his complaint.

[5]This dismissal includes all claims made by plaintiff in Counts V, VI, and VII of his complaint.